MASSACHUSETTS TEACHERS ASSOCIATION & others[1] vs.
TEACHERS' RETIREMENT BOARD.

Suffolk. January 7, 1981. — April 8, 1981.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Retirement. Pension. School and School Committee,* Retirement bene-
fits. *Statute,* Construction.

Although a retirement board had erroneously included retirement incen-
tive payments and payments for accumulated unused sick leave in
calculating retirement benefits under G. L. c. 32, § 5 (2) (*a*), it was not
required to continue to include those payments in its calculations as to
those employees who were employed prior to the enactment of
St. 1979, c. 681, which redefined "regular compensation" as expressly
excluding those payments from the calculations; the retirement board,
however, could continue to include the payments in the calculation of
benefits as to those employees who retired, or indicated definitely an
intention to retire, prior to the approval of c. 681 on November 5,
1979, although not required to do so by c. 32, § 25 (5), or a constitu-
tional command of the contract clause or of due process. [347-349]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on November 19, 1979.

Upon transfer to the Superior Court Department, the
case was heard by *Hurd,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Robert J. Muldoon, Jr.* (*Peter J. McCue* with him) for the
plaintiffs.

*E. Michael Sloman,* Assistant Attorney General, for the
defendant.

*William F. Looney, Jr.,* for Massachusetts Association of
School Superintendents, amicus curiae, submitted a brief.

---

[1] Cambridge Teachers Association, Roland E. LaChance, and Mary F.
McCarthy.

*D. M. Moschos*, for Massachusetts Municipal Association & another, amici curiae, submitted a brief.

KAPLAN, J.  We refer the reader to a companion case, *Boston Ass'n of School Adm'rs & Supervisors* v. *Boston Retirement Bd.*, *ante* 336 (1981), decided this day.

The plaintiffs herein are Massachusetts Teachers Association, a corporation with a membership of public school teachers, including retired teachers, who are participants in the retirement system administered by the Teachers' Retirement Board; Cambridge Teachers Association, an unincorporated employee organization as defined by G. L. c. 150E, § 1, comprising employees of the Cambridge public schools, which sues as representative of similiar organizations; Roland E. LaChance, a teacher in a Cambridge public school and a participant in the retirement system of the Teachers' Retirement Board, who sues as a representative of the class of employees participating in that system; and Mary F. McCarthy, formerly a teacher in a Cambridge public school now receiving retirement benefits from the Teachers' Retirement Board, who sues as representative of other teachers similarly receiving retirement benefits.  The defendant is the Teachers' Retirement Board created by G. L. c. 15, § 16, to manage the teachers' retirement system established under G. L. c. 32, § 20 (2).

A statement of agreed facts, on which the action was considered below, recounts that where a contract with teachers in any political subdivision has provided for early retirement incentive payments, the present retirement board has been including those payments to retirees as part of the "regular compensation" on which retirement allowances are calculated; and it has similarly included payments for accumulated unused sick leave.  Herein the practice of the present retirement board has been at odds with that of the Boston retirement board in the companion case.  The practice giving effect to the retirement incentive payments in figuring retirement benefits commenced on September 27, 1976, and the parallel practice concerning sick leave pay-

ments commenced on November 29, 1977. Illustrative is the case of the city of Cambridge. In the contract of the Cambridge school committee with the Cambridge Teachers Association for September 1, 1977, to August 31, 1980, there was provision both for early retirement incentive and sick leave payments.[2] The plaintiff McCarthy is retired under the terms of that contract and receiving retirement allowances based in part on early retirement incentive payments.

The present action was brought promptly upon the enactment of St. 1979, c. 681, to obtain a declaration of its invalidity as it might be "retroactively" applied to those employed prior to the effective date of the statute. The retirement board opposed such a result. A judge of the Superior Court wrote (consistently with what we have now written in *Boston Ass'n of School Adm'rs*) that the retirement board had been in error in including the retirement incentive and sick leave payments[3] in the calculation of benefits under the statutes as they stood before St. 1979, c. 681; that statute was not needed as a clarifier. Moreover he found no such administrative practice as might raise a question under G. L. c. 32, § 25 (5), or the Constitution. There was not such an ambiguity about the prior law as would let in administrative practice as a guide.[4] And in any case the practice, which could claim support in an opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 97 (1977), as to sick leave payments (but from which the

---

[2] Retirement incentive payments were $2,400 for each of three years immediately preceding retirement, with a provision for pay-back with 8% interest in case the teacher finally decided not to retire. The sick leave payment was also subject to pay-back, but without interest.

[3] The question of sick leave payments was not squarely raised in *Boston Ass'n of School Adm'rs,* but we think they go by the same rule as the retirement incentive payments.

[4] On the point that administrative practice in this field should not legitimate a course derogating from defined legislation, see *Weber* v. *Levitt,* 41 App. Div. 2d 452, 457 (N.Y. 1973), aff'd 34 N.Y.2d 797 (1974); *Kivo* v. *Levitt,* 67 App. Div. 2d 464 (N.Y. 1979).

Attorney General, representing the retirement board, recedes in his brief in the present case),[5] had not been of such duration as to generate reasonable expectations that had to be respected.[6]

The judge's declaration was for the defendant retirement board in terms of the validity of c. 681 and the authority of the retirement board to exclude the payments in question from the calculation of retirement benefits. The declaration, however, was not so framed as to respond to a statement of policy which the retirement board made to the court, namely, that it intends in all events, notwithstanding a decision favorable to itself in the instant litigation, to include the payments in the calculation of retirement benefits as to those individuals only who retired before February 3, 1980, the effective date of c. 681, or who had indicated an intention to retire before that date; as to those persons it evidently feels a good faith commitment.

The stated policy would go further in favor of the pre-February 3, 1980, retirees and intending retirees than the judge thought required by law, or this court now thinks required; and it should be understood that paying excessive

---

[5] Criticizing the Attorney General's opinion, the judge said: "The Opinion of the Attorney General . . . concluded that sick leave severance lacked the 'temporary or non-continuing character' of a bonus because 'it seems more reasonable to assume that the future agreements will contain similar provisions.' . . . However, it seems that the Attorney General incorrectly focused on the repetition of the provision for all teachers rather than the explicit 'annual rate' concept in the retirement allowance calculation for each individual member. Further, it is suggested that the Opinion incorrectly analogizes sick leave severance to a teacher's 'salary payable under the terms of an annual contract for additional services.' Unlike sick leave severance, which is paid only once, nothing prevents a teacher from regularly contracting for additional services each year of employment."

[6] The judge said: "[T]he enactment of St. 1979, c. 681, occurring only two or three years after the Board's action, was a reasonably prompt legislative response [to an erroneous administrative practice], especially when the inclusion of unused sick leave and early retirement incentives in the definition of 'regular compensation' [as] defined in G.L. c. 32, § 1 was not conceived by legislative enactment but was a child of the collective bargaining process at the community level."

benefits to some claimants puts a strain on the system in making the payments due to others.[7]   Still we think there is an equity in favor of those who, being covered by collective contracts with early retirement incentive or similar provisions, in fact retired before the approval of c. 681 on November 5, 1979,[8] or indicated definitely before that date an intention to retire at a stated time which was in fact followed by retirement at that time.   We think the expectations to that extent may be respected although this is not strictly required by § 25 (5) or a constitutional command of the contract clause or of due process.

Upon application, the single justice of this court for the time being will enter a judgment in accordance with the foregoing opinion.   Any outstanding stay will be dissolved.[9]

*So ordered.*

---

[7] The retirement board moved below, unsuccessfully, for leave to introduce evidence of the serious financial consequences of its having to respect early retirement incentive payments and similar payments in calculating retirement allowances — this in support of the validity of c. 681 as a police measure (assuming it effected substantive changes "retroactively").   In view of our approach and holding, the question need not be discussed.   See *Opinion of the Justices*, 364 Mass. 847, 863-864 (1973), as to the possible effect of catastrophic financial conditions on obligations of the retirement systems.

[8] As to the use of the date of approval, rather than the effective date, as cutting off expectations, compare *Kleinfeldt* v. *New York City Employees' Retirement Sys.*, 36 N.Y.2d 95, 100-101 (1975); *Kranker* v. *Levitt*, 30 N.Y.2d 574, 575-576 (1972) (Breitel, J., dissenting).

[9] The court acknowledges a brief submitted by the Massachusetts Association of School Superintendents, and a brief submitted jointly by the Massachusetts Municipal Association and the City of Worcester, all as friends of the court.