LEXINGTON EDUCATION ASSOCIATION & others[1] vs. TOWN OF
LEXINGTON & others.[2]

Middlesex.    April 11, 1983. — May 10, 1983.

Present: GREANEY, CUTTER, & PERRETTA, JJ.

*Municipal Corporations*, Employees. *Statute*, Construction. *Laches.
Waiver.*

General Laws c. 32B, § 2(*d*), does not permit a municipality to require
   more than twenty hours of service a week from its employees as a
   qualification for coverage under the municipality's group insurance
   plan. [751-756]
Employees of a town contending that the town improperly interpreted
   G. L. c. 32B, § 2(*d*), to require more than twenty hours of service a
   week from its employees as a condition for coverage under the town's
   group insurance could not be barred by laches or waiver from obtain-
   ing a judicial declaration of present rights under the statute. [756]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 10, 1980.

The case was heard by *Mitchell*, J., on  motions for sum-
mary judgment.

*J. Owen Todd* (*David H. Erichsen* with him) for the
defendants.

*Paul R. Gupta* (*Robert J. Muldoon, Jr.,* with him) for the
plaintiffs.

*Alan P. Danovitch*, Special Assistant Attorney General,
for Massachusetts Group Insurance Commission, amicus
curiae, submitted a brief.

GREANEY, J.   The question in this case is whether, by
reason of the definition of the word "employee" in G. L.

---

[1] Three officers of the Lexington Education Association.

[2] The chairman of the board of selectmen, the treasurer, and the school
committee of the town of Lexington.

c. 32B, § 2(d), a municipality is foreclosed from requiring of its employees more than twenty hours of service per week as a qualification for coverage under the municipality's group insurance plan. The town of Lexington takes the position that the statute sets a twenty-hour minimum requirement for coverage, above which municipalities are free to set their own standards. Lexington's policy is to provide coverage for employees who work at least twenty-five hours per week. The Lexington Education Association (Association) asserts that a municipality may not set a standard different from the twenty-hour test enunciated in the statute. The Association brought an action in the Superior Court for a declaration of rights pursuant to G. L. c. 231A, injunctive relief and damages. On cross motions for summary judgment, a judge of the Superior Court denied Lexington's motion and granted partial summary judgment to the Association, Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), declaring in the ensuing judgment that Lexington was "legally obligated . . . to provide health insurance benefits for unit employees employed by the school committee for no less than twenty hours a week and who otherwise meet the requirements of G. L. c. 32B, [§] 2(d)." In a detailed memorandum of decision accompanying the judgment, the judge determined the statutory language to be clear and unambiguous on the contested point, the result supported by legislative history, and the claim, at least insofar as it sought a declaration of rights, not to be barred by laches. The judgment is accompanied by an order permitting immediate appeal.[3] See Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). We affirm.

---

[3] Although the judgment declares the rights and obligations of the parties under G. L. c. 32B, it is not entirely dispositive of the case inasmuch as it does not address the plaintiffs' claim for reimbursement of expenses incurred as a result of the unlawful denial of group insurance benefits. It therefore may not be a judgment "finally adjudicating the rights of the parties," Mass.R.Civ.P. 54(a), 365 Mass. 820 (1974), subject to immediate appeal, see Politano v. Selectmen of Nahant, 12 Mass. App. Ct. 738, 740 (1981), in the absence of a determination pursuant to Mass.R.Civ.P. 54(b), that there was no just reason for delay in the entry of judgment on

1. General Laws c. 32B, § 3, as appearing in St. 1961, c. 334, § 1, provides that upon acceptance of c. 32B by a governmental unit, that unit must purchase certain group insurance "covering employees." An "employee" is defined (in pertinent part) in G. L. c. 32B, § 2(d), as appearing in St. 1958, c. 580, as "any person in the service of a governmental unit . . . who receives compensation for such service . . . ; provided, the duties of such person require no less than twenty hours, regularly, in the service of the governmental unit during the regular work week of permanent or temporary employment." We think this can be taken only as including, within the term "employee," all who work for the governmental entity and are paid for their efforts except those who do not meet the qualifications ex-

_____

the claim for a declaration of rights under G. L. c. 32B. The certification implies a conclusion by the judge that "multiple claims" are present for purposes of rule 54(b) (thereby allowing piecemeal review via the certification procedure) in that the complaint seeks a declaration of rights, injunctive relief and damages for expenses incurred in the past by reason of the improper administration of the statute, only the question of damages being left unadjudicated by the judgment. Whether "multiple claims" exist in an action like this is a complex question involving an area of law characterized by the absence of settled guidelines. See 10 Wright & Miller, Federal Practice and Procedure § 2657, at 62-64 (2d ed. 1983). See also Smith & Zobel, Rules Practice § 54.5 (1977). Since the judge's conclusion that the complaint states multiple claims is at least arguable and has not been questioned by either party, we need not address it. Apart from the question of multiple claims, we think, after review under the standards and cases set forth in *United States Trust Co.* v. *Herriott,* 10 Mass. App. Ct. 313, 320-321 (1980), that the judge's determination that judgment should enter was a proper exercise of discretion in the "advance[ment of] the interests of sound judicial administration." Id. at 322. See *Sears, Roebuck & Co.* v. *Mackey,* 351 U.S. 427, 437 (1956). The decision below deals with a subject of considerable importance to municipalities throughout the Commonwealth and contradicts the Group Insurance Commission's interpretation of G. L. c. 32B, upon which many public authorities may have relied. In this respect, the decision creates uncertainty and confusion over an ongoing matter of public administration, previously thought to be settled, sufficient to warrant an immediate appellate opinion on the merits. See *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943).

pressed in the provisos[4] which immediately follow the broad general definition. In other words, we interpret the quoted language of the statute as conferring employee status on all compensated persons engaged in the service of Lexington whose duties require no less than twenty hours per week of regular service to the town. This includes those who work between twenty and twenty-five hours per week — persons currently excluded from coverage by Lexington's self-imposed and super-statutory twenty-five hour minimum requirement. We reject the notion that statutory authority for the imposition of such a standard may be found in the last sentence of § 2(d), as appearing in St. 1958, c. 580, which provides that "[a] determination by the appropriate public authority that a person is eligible for participation in the plan of insurance shall be final." This clause does no more than authorize the town to make binding final determinations of whether individual employees qualify under the statutory standard. It does not empower the town to adopt a more restrictive standard.[5]

Our interpretation of the proviso as a device to excise a discrete group from the broad general definition of "employee," and no more, is supported by long-standing rules of statutory interpretation. "It is a cardinal rule of interpreta-

---

[4] A second proviso excludes seasonal and emergency employees. An "exception" clause excepts elected personnel from the operation of either of the exclusionary provisos.

[5] Lexington suggests that G. L. c. 32A, § 8, inserted by St. 1974, c. 794, § 1, the contributions section of the statute covering insurance for State employees, contains language similar to G. L. c. 32B, § 2(d), and that this language has the effect of allowing the State to set its contribution level at any point which is "no less than" seventy-five percent. There are significant differences between the statutes. Section 8 contains an express authorization for the State to contribute more than the prescribed minimum and sets the conditions under which that authority may be exercised. The proviso of G. L. c. 32B, § 2(d), merely excludes from the all-encompassing definition of "employee" those who work fewer than twenty hours per week. If anything, this suggests that, had the Legislature intended the result urged by Lexington, it would have employed a language formula such as the one appearing in G. L. c. 32A, § 8, rather than the formula it actually used in G. L. c. 32B, § 2(d).

tion that ' . . . where a provision, general in its language and objects, is followed by a proviso, . . . the proviso is to be strictly construed, as taking no case out of the provision that does not fairly fall within the terms of the proviso, the latter being understood as carving out of the provision only specified exception, within the words as well as within the reason of the former.' Endlich, Interpretation of Statutes, 742." *Opinion of the Justices*, 254 Mass. 617, 620 (1926). See also *Rubin* v. *Prescott*, 362 Mass. 281, 287 n.6 (1972); *Loyal Protective Life Ins. Co.* v. *Massachusetts Indem. & Life Ins. Co.*, 362 Mass. 484, 493 (1972). "Where there is doubt . . . as to the extent of the restriction imposed by a proviso on the scope of another provision's operation, the proviso is strictly construed. The reason for this is that the legislative purpose set forth in the main or dominant body of an enactment is assumed to express the legislative policy, and only those subjects expressly exempted by the proviso should be freed from the operation of the statute." 2A Sands, Sutherland Statutory Construction § 47.08, at 82 (4th ed. 1973). What the proviso does here is to exclude from the statute's coverage all those who work less than twenty hours per week. In sum, we conclude that the § 2(*d*) proviso was not intended to confer discretion on the town to set higher standards of qualification for insurance coverage than those expressed in the statute.[6]

2. Our conclusion is further supported by the legislative history of the statute. In St. 1955, c. 760, § 1, which created G. L. c. 32B, an "employee" was defined as "any person in the service of a governmental unit, . . ; provided, the duties of such person require that a substantial part of his time be devoted to the service of the governmental unit during the regular work week of permanent employees." That definition was altered to substantially its present form

---

[6] It is worth noting that if Lexington's interpretation of the statute were adopted a municipality would be free to raise the number of hours needed by an employee to qualify for insurance benefits to a level which would exclude most of its work force, thereby frustrating the statute's purposes.

in St. 1958, c. 536, which appears to have had its genesis in 1958 House Doc. No. 2822. In that bill, the definition would have retained the "substantial time" test of St. 1955, c. 760, § 1, with the added qualification that a person would have to devote at least twenty hours per week to his public employment in order to be eligible for "employee" status. This bill was subsequently displaced by 1958 House Doc. No. 3023, which dropped the "substantial time" test altogether and contained the statement that the duties of an "employee" shall be such as to "require no less than twenty hours, regularly." The House passed this proposal and sent it to the Senate, where 1958 Senate Doc. No. 722, containing essentially the current formulation of "employee," was substituted for it. Senate Doc. No. 722 was subsequently enacted as St. 1958, c. 536. The Senate measure differed most noticeably from the House version in the refinement of its draftsmanship. The requirement of no less than twenty hours of regular service per week became a proviso to the general rule that any person in the service of a governmental unit was an "employee." By reason of the rules of statutory construction previously discussed, this removed the potential for ambiguity in House Doc. No. 3023, which had placed the twenty-hour requirement in an independent clause, thereby creating some uncertainty as to the scope of the public authority's discretion in determining eligibility. [7] All of this indicates steady movement away from broad discretion in the public authority as to who was to receive the statute's benefits, in favor of a more specific statutory

---

[7] That discretion is embodied in the following language of § 2(d): "A determination by the appropriate public authority that a person is eligible for participation in the plan of insurance [i.e., is an "employee"] shall be final." Although such language has been a feature of § 2(d) since its original enactment by St. 1955, § 760, § 1, we consider the broad discretion it originally conferred (under the "substantial time" standard of St. 1955, c. 760) to have been limited by the definition of "employee" which became effective with St. 1958, c. 536, under which an employing authority need only determine whether the objective statutory criteria have been met.

definition of "employee," creating an easily applied bright line test.[8]

3. Lexington urges the application of the principle, explained in *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 491-492 (1978), that weight should be given to agency interpretations of regulatory statutes, such as the December 19, 1979, advisory opinion of the Group Insurance Commission (commission) which supports the town's interpretation of § 2(*d*). The amicus brief of the commission asserts that ten such formal advisory rulings have been issued concerning § 2(*d*), pursuant to its authority under G. L. c. 32B, § 11, all consistent with Lexington's position on the statute. Unlike the situation before the *Amherst-Pelham* court, however, which involved an administrative interpretation "both reasonable and consistent with the statutory scheme," 376 Mass. at 492, the agency interpretation here in issue is directly contrary both to settled rules of statutory construction and the legislative history of the enactment.[9] "Courts are not bound by erroneous administrative constructions of a statute. See *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964)." *Johnson* v. *Martignetti*, 374 Mass. 784, 790 (1978). See also *Amherst-Pelham, supra* at 491. We conclude that the commission's advisory rulings on § 2(*d*) have not been in accord with the correct interpretation of the statute and are entitled to no weight. See *Massachusetts Teachers Assn.* v. *Teachers' Retirement Bd.*, 383 Mass. 345,

---

[8] The plaintiffs have presented several other arguments which support the interpretation of the statute we have adopted. In view of the analysis in parts 1 and 2 of this opinion, we deem it unnecessary to discuss them.

[9] The commission appears to trace its interpretation of § 2(*d*) to an August 6, 1958, letter from its then executive director, William A. Burke, to Governor Foster Furcolo urging him to sign the legislation containing the language in issue. The letter, which loosely summarizes the legislation and refers to Burke's participation in its development, cannot, in our opinion, be read as expressing a view one way or the other on the question whether public authorities may set minimum work requirements for participation which exceed the statutory twenty hours.

347 & n.4 (1981); *Holden* v. *Division of Water Pollution Control*, 6 Mass. App. Ct. 423, 429 (1978).

4. The defendants argue that the principles of laches and waiver should bar recovery of damages because "[the plaintiffs] have been on notice for at least seven years that the [t]own had established eligibility criteria above the minimum, threshold requirement of twenty hours set forth in section 2(*d*)." Whether laches and waiver should affect the plaintiff's right to damages is not a question properly before us since the question of damages has yet to be tried in the Superior Court. Those principles, however, cannot prevent the plaintiffs from obtaining a judicial declaration of present rights under a statute which continues in effect. See generally *Sears* v. *Treasurer & Recr. Gen.*, 327 Mass. 310, 326-327 (1951). Cf. *DiGloria* v. *Chief of Police of Methuen*, 8 Mass. App. Ct. 506, 516 (1979). *Yetman* v. *Cambridge*, 7 Mass. App. Ct. 700 (1979), in which laches was held to bar an action brought by police officers against a city in 1974, based on rights accruing under an ordinance during the period from 1967 to 1972, is not helpful to the defendants. That case is distinguishable by the lapse of the ordinance before suit was commenced.

*Judgment affirmed.*