404 Mass. 365 . 365

Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59, v. Chatham.

TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS
UNION, LOCAL NO. 59, *vs.* TOWN OF CHATHAM.

Bristol. November 10, 1988. — March 16, 1989.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Municipal Corporations*, Group insurance. *Insurance*, Group, Health care organization. *Declaratory Relief. Chatham. Words*, "A plan."

General Laws c. 32B did not prohibit a town from offering more than one indemnity-type group health insurance policy to its employees and did not prevent the town from contributing to more than one such group policy; however, where the town was bound by the provisions of G. L. c. 32B, § 7, it was restricted to contributing exactly fifty per cent of an employee's premium to a certain plan, even if that amount in dollars was less than or greater than fifty per cent of the premium of another group indemnity-type health insurance policy offered to its employees. [367-371]

CIVIL ACTION commenced in the Superior Court Department on March 31, 1986.

The case was heard by *George N. Hurd, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William M. Straus* for the plaintiff.

*Michael C. Gilman* for the defendant.

O'CONNOR, J. Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 (Teamsters), is the certified collective bargaining agent for all regular full-time police officers on the Chatham police department, excluding the staff sergeant, lieutenant, and chief. The Teamsters offers its members a health and welfare plan which provides indemnity-type group health insurance benefits (Teamsters plan). This plan is considered a benefit of Teamsters union membership, and the police officers have asked Chatham to contribute to the plan and to allow them to participate in it.

Since April, 1985, Teamsters has negotiated with Chatham for a collective bargaining agreement covering the members of the police department bargaining unit. On March 25, 1986, the parties reached an agreement covering the period July 1, 1985, through June 30, 1987. That agreement did not allow the police officers to obtain health insurance coverage under the Teamsters plan. Instead, the police officers were offered coverage under the group health insurance policy that Chatham offers all its municipal employees (Aetna plan), with an option to elect alternative coverage by a health maintenance organization (HMO). Chatham's position now and throughout the course of negotiations with the Teamsters is that G. L. c. 32B (1986 ed.) allows it to contribute to only one indemnity-type health insurance plan on behalf of all its municipal employees, and that, accordingly, the statute does not permit it to offer alternative, competing indemnity-type plans such as the Teamsters plan. The Teamsters and Chatham agreed that negotiations would reopen if Chatham were to receive an authoritative interpretation of G. L. c. 32B allowing Chatham to contribute to both the Teamsters and the Aetna indemnity-type health insurance plans. The parties stipulated that, before Chatham would contribute to or allow its employees to elect coverage under the Teamsters plan, that plan would meet all the requirements of G. L. c. 32B.

On March 31, 1986, Teamsters brought an action in the Superior Court seeking a declaratory judgment that Chatham may lawfully contribute to the Teamsters plan for its police officers in the same dollar amounts it contributes to the Aetna plan for its other municipal workers. On May 26, 1987, on the basis of stipulated facts, a judgment was entered declaring "that G. L. c. 32B constitutes an exclusive statutory scheme to provide a plan of group insurance for persons in the service of 'counties, except Worcester County, cities, town and districts and their dependents' which prohibits such political subdivisions, the Town of Chatham included, from offering or providing more than one indemnity insurance plan for all of its employees." Teamsters timely appealed, and we transferred

404 Mass. 365                                    367

Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59, *v.* Chatham.

the matter here on our own motion.[1] We now vacate the judgment below and remand for the entry of a new judgment consistent with this opinion.

The judge reasoned, and the town argues, that the Legislature's choice of the singular noun "a plan" in §§ 1 and 10 of c. 32B prohibits Chatham from offering or contributing to more than one indemnity-type group health insurance policy. That conclusion, however, is unwarranted. Section 1 provides that "[t]he purpose of this chapter is to provide a plan of group life insurance, group accidental death and dismemberment insurance and group general or blanket hospital, surgical, medical, dental and other health insurance for certain persons in the service of counties, except Worcester county, cities, towns and districts and their dependents." To interpret the phrase "a plan" as meaning only one group insurance plan would literally require that there be just one plan covering all county, city, town, and district employees throughout the State except for Worcester County. This was clearly not the intent of the Legislature in enacting c. 32B. That statute sets up a comprehensive scheme enabling each community which votes to accept the statute to contract for and contribute to a program of insurance for its employees. A community is bound by expressly stated constraints in setting up its program, but is given broad authority to act within those constraints. The Legislature used the phrase "a plan" in § 1 in this broader sense, to encompass a State-wide system consisting of numerous group insurance plans which would cover Massachusetts municipal employees.

Section 10 sets out the procedure by which a town may accept the provisions of the chapter. It refers to c. 32B as "authorizing any . . . town . . . to provide *a plan* of contributory group life insurance, group accidental death and dismemberment insurance, and group general or blanket hospital, surgical, medical, dental and other health insurance for certain persons

---

[1] While the March 25, 1986, collective bargaining agreement between Teamsters and Chatham expired on June 30, 1987, the issue on appeal continues to affect the ongoing bargaining relationship between the parties, and thus is properly before us on an appeal from a declaratory judgment. Contrast *Reilly* v. *School Comm. of Boston*, 362 Mass. 689, 695 (1972).

in the service of such . . . town" (emphasis added). While it is possible to interpret this language as indicating that a town is authorized to provide only one group policy or "plan" of each type of insurance, the sounder reading is that the Legislature used "a plan" here in the same way it did in § 1, indicating a comprehensive scheme of coverage which might consist of one or more group policies for each type of insurance. Moreover, even if one were to interpret the word "plan" in this section as referring to a discrete group policy such as the "Aetna plan" or the "Teamsters plan," the fact that a town is authorized to provide and contribute to "a plan" does not mean that it is forbidden to provide and contribute to more than one. "[T]he particle 'a' is not necessarily a singular term; it is often used in the sense of 'any,' and is then applied to more than one individual object." *National Union Bank* v. *Copeland*, 141 Mass. 257, 266 (1886).

Finally, there is nothing in the language or purpose of other sections of c. 32B that indicates that a town or other governmental unit is restricted from offering more than one indemnity-type group health insurance policy to its employees, if it chooses to do so. Indeed, the contrary is true. Chapter 32B, § 3, provides that, "[u]pon acceptance of this chapter . . . the governmental unit shall negotiate with and purchase, *on such terms as it deems to be in the best interest of the governmental unit and its employees, from one or more* insurance companies, savings banks, or non-profit hospital, medical, dental, or other, service corporations, a *policy or policies* of group life and accidental death and dismemberment insurance covering employees, and group general or blanket insurance providing hospital, surgical, medical and dental benefits . . . " (emphasis added). Also among the provisions of § 3 is a requirement that "[t]he *policy or policies* providing hospital, surgical, medical, dental and other health insurance" shall contain a condition restricting coverage of abortion (emphasis added). This language suggests legislative foresight that a governmental unit might, in its discretion, decide to offer more than one group health insurance policy to its employees.

Chatham has apparently adopted an interpretation of another section of this chapter that undermines its argument here. Section 16 authorizes a local government to "enter into *a contract* . . . to make available the services of *a health care organization*" as an alternative to indemnity-type group health insurance (emphasis added). Notwithstanding the Legislature's use of singular nouns in this section, Chatham has evidently interpreted § 16 as authorizing it to contract with more than one health care organization. The stipulation of facts indicates that Chatham "offers one group indemnity health insurance plan to all its municipal employees with an option of electing alternative coverage by *multiple* health care organizations" (emphasis added). We do not disagree with Chatham's interpretation of § 16, but it is plainly inconsistent for Chatham to read reference in § 16 to "a health care organization" as allowing it to contract with more than one health care organization, and then claim that language in §§ 1 and 10 referring to "a plan" restricts it to offering only one indemnity-type policy. See Rep. A.G., Pub. Doc. No. 12, at 146 (1979) (Commonwealth entered into contracts with three different HMOs under G. L. c. 32A, § 14, which was passed as part of the same legislative enactment with G. L. c. 32B, § 16, and which authorizes the Group Insurance Commission to "enter into *a contract* . . . to make available the services of *a health care organization*" [emphasis added]).

An interpretation of G. L. c. 32B that allows local governmental units to contract for and contribute to more than one indemnity-type group health insurance policy is compatible with the Legislature's general purpose of gathering employees into large groups to facilitate bargaining for and administering insurance coverage. See *Municipal Light Comm'n of Taunton* v. *State Employees' Group Ins. Comm'n*, 344 Mass. 533, 539 (1962). Indeed, the Legislature expressly deviated from this general purpose in certain sections of the statute. For example, c. 32B authorizes governmental units to allow employees individually to elect coverage by a health care organization rather than be covered by a group indemnity-type health insurance plan. G. L. c. 32B, § 16. The statute also gives each employee

the option to elect to withdraw from group insurance coverage. G. L. c. 32B, § 4, as amended by St. 1986, c. 705, §§ 1, 2. The general policy of amassing large groups is clearly not so pervasive as to warrant the conclusion, absent an express statement in the statute, that a town may provide only one group indemnity-type insurance option for its employees.

While we agree with Teamsters that Chatham is not prohibited by G. L. c. 32B from contributing to more than one indemnity-type group health insurance policy, we do not accept Teamsters' further assertion that Chatham should contribute to coverage under the Teamsters plan in the same dollar amount as it now contributes to the Aetna plan. Chatham has not accepted G. L. c. 32B, § 7A. Therefore, by the terms of § 7A (d), it is bound by the provisions of G. L. c. 32B, § 7. Section 7 mandates that a town contribute fifty per cent of the premium for the insurance of an employee and his dependents, with the remaining fifty per cent to be withheld from the employee's paycheck. See *Watertown Firefighters Local 1347* v. *Watertown*, 376 Mass. 706, 710 (1978); *School Comm. of Holyoke* v. *Duprey*, 8 Mass. App. Ct. 58, 63 (1979). Because it is bound by § 7, Chatham may only contribute exactly fifty per cent of an employee's premium under the Teamsters plan, even if that amount in dollars is less than or greater than fifty per cent of the premium cost of another group indemnity-type health insurance policy that Chatham offers to its employees.[2] Teamsters looks for support to the Appeals Court decision in *Hemman* v. *Harvard Community Health Plan*, 18 Mass. App. Ct. 70 (1984), which requires a governmental unit's contribu-

---

[2] If Chatham were to accept the provisions of § 7A, it could contribute more than fifty per cent of the cost of an employee's premium under an indemnity-type policy, but would still be required to contribute at the same percentage rate for all groups of employees, regardless of any difference in the dollar amounts of such contributions. G. L. c. 32B, § 7A. See *Watertown Firefighters Local 1347* v. *Watertown*, 376 Mass. 706 (1978); *Swampscott Educ. Ass'n* v. *Swampscott*, 391 Mass. 864 (1984). Chatham is not prohibited from negotiating with a bargaining group to provide some other benefit to redress any dollar differential that may exist between its contributions to that group's insurance policies and its contributions to the policies of other municipal workers. *Id.* at 868.

tion to an employee's premium charge for a health care organization to be equal in dollar amount to its contribution to an employee's premium charge under an indemnity-type group health insurance policy. That decision, however, rests on the specific language and purpose of G. L. c. 32B, § 16, and is limited to cases involving health care organizations. *Id.* at 73.

We conclude that G. L. c. 32B does not prohibit Chatham from offering more than one indemnity-type group health insurance policy to its employees and does not prevent Chatham from contributing to more than one such group policy, with contributions to be at a fifty per cent rate for all employees. We vacate the judgment entered in the Superior Court and remand the case to that court for the entry of a declaratory judgment to that effect.

*So ordered.*