JAMES SHEA & others[1] vs. BOARD OF SELECTMEN OF WARE.

No. 92-P-172.

Hampshire. March 3, 1993. - April 15, 1993.

Present: KASS, GREENBERG, & LAURENCE, JJ.

*Municipal Corporations*, Group insurance.

A town's board of selectmen acted with the authority conferred on it by G. L. c. 32B, § 2(d), when it voted that elected town officials whose duties require less than twenty hours a week would no longer be eligible for participation in the town's group health insurance plan. [335-338]

CIVIL ACTION commenced in the Superior Court Department on December 28, 1990.

The case was heard by *George C. Keady, Jr.*, J., on motions for summary judgment.

*David A. Wojcik* for the defendant.
*Alan D. Sisitsky* for the plaintiffs.

LAURENCE, J. Beset by funding cuts and economic difficulties, like so many communities in the Commonwealth, the town of Ware on April 2, 1990, decided, by vote of its board of selectmen (board), that elected town officials who do not regularly work twenty hours per week would no longer be eligible for participation in the town's group health insurance plan as of July 1, 1990, the beginning of the town's next fiscal year.[2] Five elected officials, the plaintiffs here, whose positions did not involve working twenty hours or more per week, had been approved in 1968 by the board as being eligible for participation in the town's insurance plan pursuant to

---

[1]Joseph S. Knapp, William H. Steinmetz, Jr., Joseph J. Ciejka, and Andrew Lawrence.

[2]There is no dispute between the parties as to the material facts recited in this opinion.

G. L. c. 32B, § 2(d).[3] They had all participated in the plan since 1968. In December, 1990, the plaintiffs sought a declaratory judgment that their termination from the plan was illegal under c. 32B and an injunction ordering reinstatement of their health insurance coverage.

As an accommodation to two of the plaintiffs, Shea and Knapp, the board had continued to make monthly health insurance premium payments on their behalf from July 1, 1990, through January 1, 1991, with the expectation that they would ultimately reimburse the town.[4] Those individuals refused to do so, relying on their contention that the board's termination of their plan participation was illegal. In their answer denying the allegations of illegality, the board counterclaimed against Shea and Knapp for the premium payments made for them after July 1, 1990.

---

[3]The pertinent language of G. L. c. 32B, § 2(d), as amended through St. 1958, c. 536, which defines the "employees" covered by municipal group insurance policies, reads as follows:

> "(d) 'Employee,' any person in the service of a governmental unit . . . who receives compensation for such service or services, whether such person be employed, appointed or elected by popular vote . . . provided, the duties of such person require no less than twenty hours, regularly, in the service of the governmental unit during the regular work week of permanent or temporary employment . . . *except that persons elected by popular vote may be considered eligible employees* during the entire term for which they are elected *regardless of the number of hours devoted to the service of the governmental unit. . . . A determination by the appropriate public authority that a person is eligible for participation in the plan of insurance shall be final.*" (Emphasis added.)

Section 2(a) of c. 32B identifies the board as the "appropriate public authority" in the case of a town.

[4]Contrary to the plaintiffs' assertion that the April 2, 1990, vote of the board "left them without any health insurance coverage," elected officials who were no longer eligible for the town's group health insurance program were entitled to continue their health insurance benefits for a period of eighteen months from July 1, 1990, pursuant to the provisions of Title X of the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1986, see 29 U.S.C. §§ 1161(a), 1162(2)(A)(i), 1163 (1988), provided that the individual officials paid the monthly premiums themselves. We note that at no time have the plaintiffs argued that they were entitled to continuation of their health plan participation at municipal expense at least for the balance of their respective elected terms

On cross motions for summary judgment, a Superior Court judge allowed the plaintiffs' motion, denied the board's, and dismissed the counterclaim. The judge construed the language of § 2(*d*), which he saw as "clear and unambiguous," as preventing the board from reversing the eligibility decision they had made in 1968 in the plaintiffs' favor, regardless of any changed conditions. He treated the statutory language making the board's determinations of participation eligibility "final" as irrelevant because it did not preclude judicial review of such decisions. He also ruled that the board's principal authority, *Ramponi* v. *Selectmen of Weymouth*, 26 Mass. App. Ct. 826 (1989), was distinguishable because it involved the correction of an initial mistake of law as to an individual's qualification as an eligible "employee" and did not address the eligibility of elected officials for benefits under c. 32B. We hold that the judge's view of G. L. c. 32B, § 2(*d*), was erroneous. The judgment for the plaintiffs should be reversed and judgment should be entered for the defendant on its counterclaim.

The plain language of the statute is precisely the reverse of that underlying the judge's conclusion. Section § 2(*d*) of c. 32B provides that any employees, including those who work less than twenty hours per week, "*may* be considered eligible" by the appropriate public authority for municipal group insurance participation notwithstanding the Legislature's bright line exclusion from eligibility of all those who work less than twenty hours in the first proviso of the section. See *Lexington Educ. Assn.* v. *Lexington*, 15 Mass. App. Ct. 749, 753-755 (1983). Contrary to the judge's implicit assumption that such employees' participation was made mandatory by the statute, the word " 'may' is not an apt word to express a positive mandate. It is a word of permission and not of command. It should be construed, if possible, in accordance with its true signification. In general, throughout our statutes, the distinction between *words of permission or discretion* and words of command, including the distinction between 'may' and 'shall,' has been carefully observed. We should not in any case lightly conclude that the distinction has been over-

looked." *Brennan* v. *Election Commrs. of Boston*, 310 Mass. 784, 786 (1942) (emphasis added, citations omitted).

In the absence of evidence that the Legislature intended that "may" should be construed as mandatory rather than permissive, see *Young's Ct., Inc.* v. *Outdoor Advertising Bd.*, 4 Mass. App. Ct. 130, 133-134 (1976); *Beach Assocs., Inc.* v. *Fauser*, 9 Mass. App. Ct. 386, 389 (1980), the words "may be considered eligible" should be held to permit, but not require, the board to determine whether the otherwise excluded under-twenty-hour employees were to be accorded the benefit of group health insurance coverage. See *Cohen* v. *Water Commrs., Fire Dist. No. 1, S. Hadley*, 411 Mass. 744, 751 (1992). No evidence of a contrary legislative intent was proffered by either the judge or the plaintiffs.

We find nothing in the legislative history, purposes or language that would support the dubious related proposition advanced by the plaintiffs and accepted by the judge. In essence, they posit that, having once made otherwise ineligible employees participants in the town's insurance program, the board is bound to continue such employees' participation perpetually by virtue of its initial decision, which can never be undone. This contention finds no support in the rules of statutory construction and the law under c. 32B. The use of the word "may" in the exception clause of § 2(*d*) "imports the existence of discretion." *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne*, 14 Mass. App. Ct. 76, 80 (1982).

The element of discretion on the part of the appropriate public authority with respect to determinations of insurance eligibility under § 2(*d*) is also reflected in the finality provision of the section[5] and has been explicitly recognized by this court. See *Lexington Educ. Assn.* v. *Lexington*, 15 Mass. App. Ct. at 754 n.7; *Ramponi* v. *Selectmen of Weymouth*,

---

[5]The judge's observation that the statute's endowing the board's eligibility determination with finality did not make it unreviewable by a court was correct but legally irrelevant to the central issue of the scope of the board's discretion under § 2(*d*). See *Ramponi* v. *Selectmen of Weymouth*, 26 Mass. App. Ct. at 829-830 & n.7.

26 Mass. App. Ct. at 829. As the Supreme Judicial Court has stated, under c. 32B, "[a] community is bound by expressly stated constraints in setting up its [insurance] program, but is given broad authority to act within those constraints." *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Chatham*, 404 Mass. 365, 367 (1989).

We know of nothing, and the plaintiffs have cited nothing, that would support truncating the board's discretion and broad authority under c. 32B so that its eligibility determinations under § 2(*d*), once made, are permanent and irreversible, regardless of changing conditions. Such a rule would undercut the discretion which § 2(*d*) confers upon it in a manner that is, as *Ramponi*, *supra*, pointed out, contrary to common sense as well as the statutory language:

> "Ramponi [the municipal official whose health insurance participation was terminated by the Weymouth board] . . . concedes, as in common sense he must, that the selectmen can make a decision under § 2(*d*) favorable to a person, and then, in the light of changed conditions, reverse the decision for the future."

*Ramponi* v. *Selectmen of Weymouth*, 26 Mass. App. Ct. at 829.

The effort to distinguish this pointedly applicable language in *Ramponi* is unpersuasive. The *Ramponi* decision, while involving an initial mistake by the board as to an individual's insurance eligibility, assumed the board's more general discretion under § 2(*d*) to take away, after reexamination, what it had earlier bestowed when subsequent circumstances demonstrate the propriety of such a reversal and the statute contains no inhibition. That premise is in accord with the analogous principle that the power of superior municipal officials to remove subordinate officers is implicit in and an incident of the power to appoint them, even when removal authority is not expressly stated in the enabling statute. See *Adie* v. *Mayor of Holyoke*, 303 Mass. 295, 300 (1939); *Fur-*

*long* v. *Ayers*, 305 Mass. 455, 456-457 (1940); *Whalen* v. *Holyoke*, 13 Mass. App. Ct. 446, 454 (1982).

The plaintiffs have failed to suggest any public policy support for their fundamental proposition that, once made eligible for the town's insurance plan, they can never be terminated. Nor can we divine any public interest that would be advanced by sanctioning the fiscal straitjacket with which the plaintiffs seek to restrain their town, especially when the realities of municipal economic stringency and skyrocketing health insurance costs are matters of common knowledge. We would require explicit statutory language or particularly convincing evidence of intent, which they have failed to provide, before we would be prepared to accept such a counter-intuitive and singular outcome. Cf. *O'Brien* v. *Analog Devices, Inc., post* 905, 906-907 (1993) ("a lifetime contract [of employment] is so extraordinary that it takes strong proof to establish one . . . [and] particularly explicit expressions of intent . . .").

Finally, the plaintiffs' cursory reliance on the so-called anti-rollback amendment, St. 1988, c. 29, § 3, amending c. 23 of the Acts of 1988 by inserting § 77A, as a constraint on the board's power to reconsider its group insurance eligibility decisions is without merit. That statute's restriction on a town's ability to increase municipal employees' premium payments protects employees who are appropriately covered by a c. 32B plan. It neither states nor effects any limitation on the power of the appropriate public authority to make eligibility determinations under c. 32B.

In view of the foregoing, judgment is to be entered for the board on the counterclaim against the plaintiffs Shea and Knapp for the insurance premium payments made on their behalf subsequent to July, 1990. The judgment dated November 26, 1991, is reversed, and judgment is to be entered declaring that the April 2, 1990, action of the board was valid.

*So ordered.*