SHERYL PARKER *vs.* TOWN OF NORTH BROOKFIELD.

No. 06-P-167.

Worcester. October 5, 2006. - February 15, 2007.

Present: GREENBERG, SMITH, & GELINAS, JJ.

*Anti-Discrimination Law,* Termination of employment. *Employment,* Termination. *Municipal Corporations,* Officers and employees.

A Superior Court judge properly granted summary judgment in favor of the defendant town in an action brought by an at-will employee who was terminated after she applied for health insurance benefits under G. L. c. 32B, where although the statutory right to insurance benefits could be asserted by private cause of action [237], the statute did not work to protect her employment status or provide an avenue for a wrongful termination claim [237-239]; the plaintiff pointed to no legislative or other source of policy barring the town from considering the public cost that her continued employment would engender if she were enrolled in the insurance program, or from reassigning her duties to another existing employee in order to avoid those costs [240-243]; and there was no support for any notion that the town acted in bad faith or was in violation of an implied covenant of good faith and fair dealing [243].

CIVIL ACTION commenced in the Superior Court Department on October 7, 2004.

The case was heard by *Bruce R. Henry,* J., on motions for summary judgment.

*Gary H. Goldberg* for the plaintiff.

*Nancy Frankel Pelletier* for the defendant.

GELINAS, J. Sheryl Parker, employed by the town of North Brookfield (town) as "dog officer/animal control officer,"[1] was discharged effective July 1, 2004, when her position was eliminated and moved to the police department. As a town employee, Parker was eligible to obtain health insurance benefits

---

[1]The source and responsibilities of Parker's position are not specified in the record or in the parties' stipulation of facts. On appeal the town suggests that she was appointed pursuant to G. L. c. 140, § 151.

from the town pursuant to G. L. c. 32B. However, when she requested enrollment in the town's insurance plan upon commencement of the new fiscal year, the town terminated Parker and eliminated her position. The town made this decision purely on the basis of avoiding the cost of providing her with insurance. Parker filed a three-count complaint: violation of G. L. c. 32B (count I); wrongful termination in violation of public policy (count II); and gender discrimination in violation of G. L. c. 151B (count III). After brief discovery, the parties agreed to a joint stipulation of facts, and filed cross motions for summary judgment on counts I and II of the complaint. A Superior Court judge allowed the town's motion and denied that of Parker. The parties then jointly stipulated to dismissal of count III, the complaint for violation of G. L. c. 151B. The court entered final judgment, dismissing count III and granting summary judgment to the town on counts I and II. Parker's appeal is now before us.

We take the facts from the parties' joint stipulation, presented to the court in support of the cross motions for summary judgment, and adopted by the judge as the basis for his decision.[2] In sum, Parker qualified for benefits under G. L. c. 32B, which the town had adopted. For many years she chose not to apply for the benefits, as she had insurance coverage by virtue of simultaneous employment by another municipality. In early 2004 she notified the town selectmen that she wished to enroll in the town's G. L. c. 32B plan as of July 1, 2004. In meetings following the request, the selectmen discussed the high cost of insurance and determined to end Parker's employment at the close of the fiscal year, transferring the functions of her position to the police department. Parker's employment ended and she com-

---

[2]The joint stipulation stated that Parker's employment was terminated and, in somewhat contradictory fashion, also stated that the position was both "eliminate[d]" and "move[d] . . . to the Police Department." Parker's complaint indicates that a police sergeant was in fact appointed to the position. In its brief on appeal, and in oral argument, the town argued that rather than terminating Parker from her position, the town had simply declined to renew her appointment, an argument not made below. For purposes of this appeal, we consider the case as it was argued and decided below, noting only that the result would be no different if we were to consider that Parker was not reappointed and that someone already receiving the health benefit in another capacity was appointed in her stead.

menced this action. In his decision, the judge first concluded, contrary to the town's contention at the hearing on summary judgment,[3] that Parker enjoyed a private right of action, although G. L. c. 32B does not expressly confer such a right. He then concluded that Parker's termination was neither a violation of c. 32B nor against public policy. We agree.

1. *Private right of action.* Inquiry into whether a statute provides for a private right of action usually begins with consideration of whether the plaintiff "is one of the class for whose benefit the statute was enacted, or to put it otherwise, whether the statute creates a right in favor of the plaintiff distinct from the public at large." *All Brands Container Recovery, Inc.* v. *Merrimack Valley Distrib. Co.*, 54 Mass. App. Ct. 297, 300 (2002). There is generally a reluctance "to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference," *Loffredo* v. *Center for Addictive Behaviors*, 426 Mass. 541, 544 (1998), especially where the statute expressly provides particular remedies for its violation, *id.* at 547. However where, as here, a statutory right is given to a certain class of individuals, and not to the public at large, and the statute provides no remedy for enforcement of that right, "the right may be asserted by any appropriate common law remedy that is available," so that the statutory right will not prove illusory. *Gabriel* v. *Borowy*, 324 Mass. 231, 234 (1949). See *Ludlow Educ. Assn.* v. *Ludlow*, 31 Mass. App. Ct. 110, 120 (1991).

2. *Violation of G. L. c. 32B.* We also agree with the judge, however, that the statute does not give rise to Parker's claimed right to employment. The statute, while providing insurance benefits for those employed by the town, does not work to protect their employment status, and thus does not provide an avenue for Parker to raise a claim of wrongful termination.

The town argues, and the judge ruled, that Parker was an at-will employee, and that her application for benefits under G. L. c. 32B did not convert her status to an employee with guaranteed permanent employment. Parker argues that once adopted by the municipality, the statute prohibits the town from terminating her

---

[3]The town does not argue that the judge's ruling was in error in this regard.

employment solely to avoid paying the expense of her health insurance.

While G. L. c. 32B provides a private right of action with respect to its subject matter, mere eligibility for the insurance does not in any way protect the employment status of a town employee. Elimination of Parker's position, resulting in her employment being terminated, does not implicate the provisions of the statute; the position, and her continued employment, bear no relationship to the purpose of c. 32B, which deals solely with insurance benefits for certain public employees.[4] The statutory language contains no direct or indirect reference to an entitlement to employment. The legislative history makes no reference to such a right resulting from passage of the statute, nor does Parker point to any such right contemplated in the proceedings during which the town adopted the statute pursuant to G. L. c. 32B, § 10, or in the establishment of the conditions of her employment. To rule that the statute imports the right to convert an at-will position to one of guaranteed employment would encourage every at-will employee to opt for the insurance in order to guarantee continuing employment, thus substantially hampering the town's ability to maintain at-will positions in its work force, a result clearly not contemplated in the statute.

This result would be especially contradictory with respect to certain at-will employees, such as town dog officers, who are subject to annual appointment. See G. L. c. 140, § 151.[5] Although the parties' stipulation does not identify the origin of

---

[4]General Laws c. 32B, § 1, as amended through St. 1982, c. 615, § 3, provides in pertinent part: "The purpose of this chapter is to provide a plan of group life insurance, group accidental death and dismemberment insurance and group general or blanket hospital, surgical, medical, dental and other health insurance for certain persons in the service of counties, except Worcester County, cities, towns and districts and their dependents." General Laws c. 32B, § 2(d), as amended by St. 1958, c. 536, defines an "[e]mployee" as "any person in the service of a governmental unit . . . who receives compensation for such . . . services, whether such person be employed, appointed or elected by popular vote . . . ."

[5]General Laws c. 140, § 151, as amended by St. 1983, c. 631, § 4, provides in pertinent part: "[T]he board of selectmen of each town shall annually on May first designate one or more dog officers, who may be police officers or constables and who, except as herein provided, shall hold office for one year or until their successors are qualified."

or the terms under which Parker was retained as dog officer,[6] under Parker's reading of G. L. c. 32B, any employee appointed by the town as dog officer for the term of one year could immediately thwart the town's right and obligation to make an annual appointment merely by opting into the insurance provisions of c. 32B. Such an outcome would fail to attribute to the Legislature "certain commonsense general purposes," *Dedham* v. *Labor Relations Commn.*, 365 Mass. 392, 402 (1974), that permit a reading of the statutes in a manner "so as to constitute a harmonious whole." *Ibid.*, quoting from *Mathewson* v. *Contributory Retirement Appeal Bd.*, 335 Mass. 610, 614 (1957). Moreover, such an interpretation would not "comport[] with the canons that interpretation should tend to preserve the substance of a statute rather than diminish it, . . . [and] should not override common sense, . . . or produce absurd or unreasonable results." *Sisca* v. *Fall River*, 65 Mass. App. Ct. 266, 272-273 (2005), quoting from *Dillon* v. *Massachusetts Bay Transp. Authy.*, 49 Mass. App. Ct. 309, 315-316 (2000).

The cases cited by Parker in support of her position are inapposite. See *Larson* v. *School Comm. of Plymouth*, 430 Mass. 719 (2000) (no requirement to continue employee benefits under G. L. c. 32B after termination for cause); *Ramponi* v. *Board of Selectmen of Weymouth*, 26 Mass. App. Ct. 826 (1989) (interpreting the definition of "employee" in G. L. c. 32B); *McDonald* v. *Town Manager of Southbridge*, 39 Mass. App. Ct. 479 (1995), *S.C.*, 423 Mass. 1018 (1996) (eligibility of employee for coverage under c. 32B as a retiree). To adopt Parker's argument would be tantamount to a declaration that once an eligible employee opts into a municipal insurance program offered by virtue of G. L. c. 32B, he or she will have achieved lifetime employment, without the strong proof and explicit expressions of intent usually required to show such appointment. See *O'Brien* v. *Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906-907 (1993) ("a lifetime contract [of employment] is so extraordinary that it takes strong proof . . . and particularly explicit expressions of intent . . . to bind an employer [to such a contract]").

Parker next argues that we should adopt Federal law

---

[6]See note 1, *supra*.

safeguarding her employment. This argument is also not persuasive. Citing various decisions under the Federal Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. (1999 & Supp. 2006), see, e.g., *Fitzgerald* v. *Codex Corp.*, 882 F.2d 586, 589 (1st Cir. 1989), Parker suggests that the "[t]own's actions here would be a clear violation of ERISA," and that we should adopt the Federal statute as policy with respect to municipal employees. We decline the invitation, especially because, unlike ERISA — which explicitly provides that it is unlawful to discharge an employee for exercising any right made available under ERISA, see 29 U.S.C. § 1140 — G. L. c. 32B contains no comparable provision.

3. *Public policy considerations.* Lastly, Parker argues that termination of her employment was against public policy, and that she is thus entitled to reinstatement, or at least damages for wrongful termination, even though she is an at-will employee. While this argument strikes closer to the mark, it is ultimately unavailing. Generally, employment that is at-will[7] may be terminated by either side at any time and without reason. See *Gebhard* v. *Royce Aluminum Corp.*, 296 F.2d 17, 18 (1st Cir. 1961) (citing Massachusetts cases); *Mechanics Foundry & Mach. Co.* v. *Lynch*, 236 Mass. 504, 505 (1920); *Fenton* v. *Federal St. Bldg. Trust*, 310 Mass. 609, 612 (1942). Thus, the town had the right to " 'terminate[] [the employment] at any time for any reason or for no reason at all,' with limited exceptions, such as public policy considerations." *York* v. *Zurich Scudder Invs., Inc.*, 66 Mass. App. Ct. 610, 614 (2006), quoting from *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 668 n.6 (1981).

In exceptional cases, for reasons of public policy, an at-will employee may maintain a cause of action and find redress where the termination results from the employee's assertion of some legally guaranteed right, or refusal to engage in illegal or harmful conduct. See *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149-150 (1989) (on public policy grounds, redress permitted for at-will employees terminated

[7]Although the parties' stipulation did not characterize Parker's employment as at-will, the judge, without motion for corrected findings, did so; nothing to the contrary appears either in the record or in the parties' materials on appeal, and we consider her employment to be at-will for the purposes of this opinion.

"for asserting a legally guaranteed right [e.g., filing [a] workers' compensation claim], for doing what the law requires [e.g., serving on a jury], or for refusing to do that which the law forbids [e.g., committing perjury" or ignoring legally required safety rules]). See also *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 810-811 (1991), and cases cited therein. Parker argues that she was terminated solely for exercising her legally guaranteed right to obtain insurance, based on the added expense to the town of providing such insurance, and that on public policy grounds, exercise of this legal right cannot provide the basis for her termination. We conclude that the exercise of this legal right should not, as a matter of public policy, provide grounds for a cause of action for redress in the event of termination of an at-will municipal employee, even if it constitutes the sole ground for termination.

In examining the question whether employees' exercise of their rights should affect employment, our cases have considered the various interests at stake. "Employees have an interest in knowing they will not be discharged for exercising their legal rights. Employers have an interest in knowing they can run their businesses as they see fit as long as their conduct is consistent with public policy. The public has an interest in employment stability and in discouraging frivolous lawsuits by dissatisfied employees." *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. at 149, quoting from *Pierce* v. *Ortho Pharmaceutical Corp.*, 84 N.J. 58, 71 (1980). As in the private sector, we think that a municipal employer has a legitimate interest in having a large amount of control over its workforce and in exercising wide discretion to adapt to changing circumstances. See *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 102 (1977). Such circumstances may include the burgeoning cost of employee insurance benefits. We think the municipality's interest, and thus that of the taxpayer, in controlling its operations and finances, and in running the town business, permitted the town to consider the financial impact of Parker's request in determining when and whether to alter the description of her at-will position, and to transfer it to another department with the resulting termination of her employment, without fear of having to deal with the prospect of either having

her locked into the position on a permanent basis, or providing other consideration as redress.

The public policy exception is narrowly construed; not every statutory right guarantees employment or provides grounds for a claim arising out of termination. For example, in *King* v. *Driscoll*, 418 Mass. 576, 584 (1994), *S.C.*, 424 Mass. 1 (1996), the court declined to apply the public policy exception where an at-will employee was terminated for a variety of reasons, including participation in a derivative stockholder suit against the company. The court observed that "the internal administration, policy, functioning, and other matters of an organization cannot be the basis for a public policy exception to the general rule that at-will employees are terminable at any time with or without cause"; "the existence of a statute relating to a particular matter is [not] by itself a pronouncement of public policy that will protect, in every instance, an employee from termination"; and "a public policy, evidenced in a particular statute, which protects employees in some instances, might not protect employees in all instances." *Id.* at 583-584. Compare *Kolodziej* v. *Smith*, 412 Mass. 215 (1992) (at-will employee discharged for failing to attend mandatory motivational seminar with religious overtones was not protected by Federal and State guarantees of religious freedom; G. L. c. 12, § 11I; or G. L. c. 151B, § 4[1A]); *Perkins* v. *Commonwealth*, 52 Mass. App. Ct. 175, 179-180 (2001) ("antihazing" statute did not guarantee that police cadet could not be dismissed for inability to withstand training).

Further, we note that in the context of the private sector, financial considerations can provide good cause to terminate an at-will employee. See *Karcz* v. *Luther Mfg. Co.*, 338 Mass. 313, 320 (1959) ("[d]ischarges because of economic conditions on a nondiscriminatory basis must be regarded as for 'just cause' "); *York* v. *Zurich Scudder Invs., Inc.*, 66 Mass. App. Ct. at 618 (cost-cutting recognized as "good cause" for terminating an at-will employee).

In *Shea* v. *Board of Selectmen of Ware*, 34 Mass. App. Ct. 333 (1993), we considered the case of town employees who, though not entitled as of right to the insurance provided under G. L. c. 32B, had nonetheless been voluntarily enrolled by the

town in the insurance program. The town later cancelled the employees' insurance coverage. In sustaining the town's action, we noted: "The plaintiffs have failed to suggest any public policy support for their fundamental proposition that, once made eligible for the town's insurance plan, they can never be terminated. Nor can we divine any public interest that would be advanced by sanctioning the fiscal straitjacket with which the plaintiffs seek to restrain their town, especially when the realities of municipal economic stringency and skyrocketing health insurance costs are matters of common knowledge[; it] would require explicit statutory language [to confer such a right]." *Id.* at 338. Parker can point to no legislative or other source of policy, nor can we find one, barring the town from considering the public cost that Parker's continued employment would engender if she were enrolled in the insurance program, or from reassigning her duties to another existing employee in order to avoid those costs. We see no reason to deny the town the same discretion in fiscal matters as exists in the private sector.

Finally, to the extent that Parker's claim imports that the town acted in bad faith, or was in violation of an implied covenant of good faith and fair dealing, that claim must fail as well. See *York* v. *Zurich Scudder Invs., Inc.*, 66 Mass. App. Ct. at 615-618 (extensive discussion of concepts of good faith and fair dealing in termination of at-will employment). "[A]n employer is entitled to be motivated by and to serve its own legitimate business interests; [the] employer must have wide latitude in deciding whom it will employ in the face of the uncertainties of the business world; and [the] employer needs flexibility in the face of changing circumstances. We recognize the employer's need for a large amount of control over its work force." *Id.* at 617, quoting from *Fortune* v. *National Cash Register Co.*, 373 Mass. at 101-102.

*Judgment affirmed.*