## JOANNE CIOCH *vs.* TREASURER OF LUDLOW & others.[1]

Hampden. April 6, 2007. - August 10, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Municipal Corporations,* Group insurance, Home rule. *Insurance,* Group. *Statute,* Construction. *Retirement. Ludlow.*

This court concluded that the defendant town properly proscribed postretirement enrollment in its G. L. c. 32B health care plans by limiting eligibility for enrollment to active employees, given the broad authority of municipalities to regulate the terms of their health care plans within the statutory framework [695-699]; accordingly, where a retiree from the defendant town's public school system was not enrolled in a town health insurance plan at the time of her retirement, she failed to demonstrate that application of the town's policy to her constituted an improper retroactive denial of health insurance benefits, in that she had not shown either that the benefits she earned as an active town employee included the right to enroll in the insurance program after retirement, or that her failure to enroll in the program was in reliance on any representation by the town concerning future eligibility [699-700].

CIVIL ACTION commenced in the Superior Court Department on October 1, 2001.

The case was heard by *C. Brian McDonald*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Sandra C. Quinn* for the plaintiff.

*Michael K. Callan* (*David J. Martel*, with him) for the defendants.

*Patrick Neil Bryant*, for Boston Police Patrolmen's Association, Inc., IUPA, AFL-CIO, amicus curiae, submitted a brief.

MARSHALL, C.J. This appeal brings us to the intersection of the statutory health insurance system for retired municipal

---

[1]The board of selectmen of Ludlow and the town of Ludlow.

employees[2] and municipal fiscal considerations.[3] We are asked to consider whether G. L. c. 32B precludes a municipality from barring initial enrollment of an employee into its municipal health insurance plans after she has retired.[4] We conclude that because the broad authority afforded to a municipality does not require it to enroll retirees who were not plan participants on retirement, a municipality may follow a policy precluding participation by retirees who, although eligible for "contributory insurance"[5] on retirement, were not enrolled in one of the municipality's health insurance plans at that time.[6]

1. *Background.* After some twenty-two years as a Ludlow

---

[2]General Laws c. 32B is a local-option statute that governs health insurance benefits for active and retired employees of municipalities and other State political subdivisions, as well as the dependents of those employees. While we use the term "municipal" throughout this opinion, our analysis applies also to other political subdivisions covered by the statute. See *Yeretsky* v. *Attleboro*, 424 Mass. 315, 316 & n.4 (1997).

[3]We are cognizant of legislation presently pending before the General Court that, if enacted, may affect municipal health insurance options. Among other things, the pending legislation proposes that municipalities be given an option to join the State's Group Insurance Commission (GIC) with respect to the provision of health care for coverage for active and retired employees. See 2007 House Doc. No. 3749, §§ 4-8 ("An Act establishing the municipal partnership act"); 2007 Senate Doc. No. 1584 ("An Act to promote quality and affordable municipal health insurance through the GIC"); 2007 House Doc. No. 2601 ("An Act to promote quality and affordable municipal health insurance through the GIC").

[4]Although regulations promulgated by the GIC under G. L. c. 32A do not apply to municipalities or G. L. c. 32B, see, e.g., *McDonald* v. *Town Manager of Southbridge*, 39 Mass. App. Ct. 479, 482 (1995), *S.C.*, 423 Mass. 1018 (1996), for simplicity we use various terms as they are defined in those regulations. In that regard, we use the terms "retired employee" and "retiree" to mean a "former employee in the service of the [municipality], whose services have ended, and who is eligible for and actually receives a retirement or pension allowance." 805 Code Mass. Regs. § 1.02 (1996) (defining term for purposes of regulations applicable to c. 32A). See G. L. c. 32, § 3 (1) (ii) ("Member Inactive" defined as employee whose employment has been terminated, and who is receiving retirement allowance, or who is otherwise on authorized leave without pay, and "who may be entitled to any present or potential retirement allowance," although not then receiving such allowance); G. L. c. 32, § 10 (3) (deferring receipt of retirement allowance).

[5]"Contributory Insurance" refers to "[i]nsurance which provides for a contribution of a part of the premium by the insured and a contribution of a part of the premium by his Employer." 805 Code Mass. Regs. § 1.02.

[6]Municipal regulation of participation and enrollment into municipal health insurance plans by a "deferred retiree" is not before us. See 805 Code Mass.

public school teacher, the plaintiff, Joanne Cioch, retired in June, 1994, at the age of fifty-five years. See G. L. c. 32, § 5. The record suggests that, at that time, Cioch "elected to continue her life insurance on retirement."[7] With respect to health insurance, however, she did not enroll in the town's public employee group insurance plan. Rather, during her tenure as an active public employee and on her retirement Cioch was enrolled in her husband's health insurance plan. When Cioch's husband retired in 1997 — about three years after her own retirement — the couple was no longer eligible for his employer's insurance program, and they purchased private health insurance.

After reading an article in a newsletter for retired persons,[8] in October, 1999, Cioch inquired of the town treasurer whether she "could be enrolled in a Town health insurance plan." She received no response either to that query or to subsequent inquiries and, in December, 1999, requested and received enrollment forms for the town's retiree group health insurance program, specifically for the health maintenance organization, Health New England. On the form she submitted to the town, Cioch requested individual enrollment and indicated that "[i]f, in the future, spouses are allowed to join," her husband would elect coverage. She also indicated that neither she nor her husband was enrolled in Medicare.[9] When Cioch learned in April, 2000, that the town had not acted on her application, she persisted in her enrollment efforts through the summer of 2000.

There is no dispute that Cioch made no preretirement inquiry

Regs. § 1.02 ("An Employee whose services terminate and who has vested rights to a retirement allowance relating to this employment which are currently deferred. The [GIC] regards such a person as an employee on leave of absence without pay, only as long as the Employee retains the right to receive a retirement allowance at some future date").

[7]Under the regulations concerning insurance for State employees, "[e]mployees and retirees other than Elderly Governmental Retirees are required to be enrolled in the [GIC's] Basic Life Insurance Program in order to be eligible for health coverage." 805 Code Mass. Regs. § 9.03 (1996).

[8]Cioch identified the newsletter as the "MTA Reporter," which we assume is a publication of the Massachusetts Teachers' Association. A copy of the publication is not part of the record.

[9]There is no evidence that Cioch applied for any other municipal health insurance plan, such as an indemnity plan, pursuant to G. L. c. 32B, § 9.

concerning postretirement health insurance eligibility, or that she was not affirmatively told that, if she was not enrolled in the town's health insurance program on retirement, she would be eligible or ineligible to enroll thereafter. Nothing in the record indicates, however, that Cioch believed she was entitled to postretirement enrollment at any time before reading a publication of an entity not connected to the town some years after both she and her husband had retired; to the contrary, the couple had purchased private health insurance after her husband retired.[10],[11] While the town appears to have had no written policy concerning postretirement enrollment at the time Cioch retired, there is no suggestion that it permitted such enrollments, or that its employees understood that it would do so.

By October 12, 1999, before Cioch either made any inquiries concerning, or submitted, her group health insurance application, the town's board of selectmen (board) formalized a written "Policy on Health Insurance,"[12] generally communicating that enrollment in the town's group health insurance program on retirement was a predicate to coverage during retirement.[13] The policy provides, in pertinent part:

> "Eligibility. Regular employees of the Town (whether employed, appointed or elected) whose normal workweek

---

[10]We do not consider whether or how the town would apply its preretirement enrollment policy to deferred retirees — employees whose employment has been terminated, but "who may be entitled to any present or potential retirement allowance," G. L. c. 32, § 3 (1) (ii) (inactive members), although not then receiving such an allowance. See G. L. c. 32, § 10 (3) (deferring receipt of retirement allowance).

[11]Similarly manifesting the lack of any general perception among municipal employees of any postretirement eligibility for employees who were not enrolled in the town's group health plans during their employment or on retirement is that only one retired employee other than Cioch has attempted to enroll in the town's health insurance plan after retirement. The town denied reenrollment to that retiree, despite the fact that he had been enrolled on retirement, but cancelled his coverage about eight years later.

[12]The written policy apparently surfaced after the town filed its opposition to Cioch's motion for summary judgment, and her motion for reconsideration. The town's oppositions to those motions referred only to a long-standing practice or policy requiring preretirement enrollment.

[13]The minutes of the meeting of the board on October 12, 1999, at which the policy was adopted, reflect that the policy was an "effort at putting together the Board's practices."

is twenty (20) or more hours per week are eligible for health insurance benefits provided by the Town.

"Enrollment. Enrollment in the health insurance plans offered by the Town is limited to eligible employees, the legal spouse, and their dependent unmarried children . . . .

"Retirees. Any employee retired by the Town under the current pension plan or who receives retirement income as a result of their employment with the Town shall be eligible to enroll in the Blue Cross/Blue Shield Blue Care 65 Plan, Blue Cross Blue Shield Medex Plan or Health New England MedWrap Plan upon attaining age 65, if they are eligible for Medicare. If a retiree is not eligible for Medicare, the employee will continue on the plan they were last enrolled in with the Town. The Town will pay 50% of the premium for the plan and the retiree will pay 50% of the premium."[14]

On October 1, 2001, Cioch filed a complaint against the town, as well as its treasurer, the board, and the board's chairman; she filed an amended complaint on July 17, 2004. She sought a declaration that the defendants had violated the "state public employee retirement law, in particular G. L. c. 32B, §§ 9 & 16, by [their] refusal to enroll [Cioch] in the Town's retiree group health insurance program," an order requiring that she be enrolled in the plan of her choice, and damages, as well as costs and attorney's fees pursuant to G. L. c. 231, § 6F.

After various preliminary proceedings, the Superior Court judge considered Cioch's motion for entry of judgment, and the defendants' request for findings of fact and rulings of law, on stipulated facts and exhibits. Treating the motion as one for summary judgment, he denied Cioch's motion, and entered judgment for the defendants, concluding that the town's regulations were properly adopted and that when Cioch first applied

---

[14]Several years later, on October 6, 2003, the town meeting added a group insurance benefit bylaw. It provides: "RETIREES. Any employee retired by the Town under the current pension plan as a result of their employment with the Town shall be eligible to continue as a participant in the group health insurance plans offered by the Town's carrier provided he/she was enrolled in a plan on the date of retirement."

for enrollment in the town's health insurance programs in December, 1999, she was ineligible under the terms of the town policy.[15] Cioch filed a timely notice of appeal, and we transferred the appeal to this court on our own motion.[16]

2. *Discussion.* Where the Superior Court judge has decided the case on stipulated facts and agreed exhibits, all questions of law and fact are open to our decision on review. See *American Lithuanian Naturalization Club, Athol, Mass., Inc.* v. *Board of Health of Athol*, 446 Mass. 310, 322 (2006). Under the Home Rule Amendment, art. 89 of the Amendments to the Massachusetts Constitution, the Commonwealth's various municipalities may undertake certain health insurance obligations to their employees. G. L. c. 32B. See *Yeretsky* v. *Attleboro*, 424 Mass. 315, 316 (1997). The town has voted to accept that responsibility and, among other provisions, has accepted G. L. c. 32B, § 16, thereby requiring it to "enter into a contract . . . to make available the services of a health care organization to certain eligible and retired employees and dependents . . . of such active and retired employees, on a voluntary and optional basis, as it deems to be in the best interest of the governmental unit and such eligible persons. . . ." Id. See *Ludlow Educ. Ass'n* v. *Ludlow*, 31 Mass. App. Ct. 110, 113 n.5 (1991). The town offers several group insurance plans for active and retired

---

[15]We do not address Cioch's claim that her denial of enrollment in the town's health insurance program is inconsistent with the terms of a collective bargaining agreement. While the parties stipulated that the applicable agreements contained no provision stating "if teachers covered by those agreements did not enroll in the Town's group health insurance program by the time they retired, they would forfeit their right to enroll," no such agreement has been made part of the record. We are therefore unable to determine what, if any, grievance procedures were required to be undertaken by Cioch. See *Johnston* v. *School Comm. of Watertown*, 404 Mass. 23, 25 (1989), quoting *Balsavich* v. *Local Union 170, Int'l Bhd. of Teamsters*, 371 Mass. 283, 286 (1976) ("Employees may not simply disregard the grievance procedures set out in a collective labor contract and go direct to the court for redress against the employer. . . . They must initiate the grievance procedures as the contract provides . . .").

[16]Shortly after we transferred the case here we solicited amicus briefs. We acknowledge the amicus brief filed by the Boston Police Patrolmen's Association, Inc., IUPA, AFL-CIO. Because we conclude that G. L. c. 32B, § 16, does not forbid a municipality from precluding postretirement enrollment in its health insurance programs, we need not rule on the town's motion to strike the brief.

municipal employees, including teachers. The parties do not dispute that a town may regulate participation in such a plan, provided such regulations are both reasonable and properly adopted. See *McDonald* v. *Town Manager of Southbridge*, 423 Mass. 1018 (1996). The question here is whether a town may, consistent with its obligations under G. L. c. 32B, adopt a policy or regulation precluding postretirement enrollment of retirees in such a health insurance plan who were not enrolled in the plan on retirement.

The decision in *McDonald* v. *Town Manager of Southbridge*, 39 Mass. App. Ct. 479 (1995), *S.C.*, 423 Mass. 1018 (1996), provides a starting point for our analysis. There, the issue was whether a statute, G. L. c. 32B, § 9 (municipal obligations with respect to group indemnity health insurance programs), precludes a retired municipal employee from enrolling, postretirement, in a municipal indemnity group health insurance plan.[17] The Appeals Court concluded that, "at least until the town issues regulations to the contrary, § 9 does not require participation by the employee at the time of retirement to obtain coverage thereafter." *Id.* at 483. On further review, we clarified "that a municipality may adopt reasonable regulations, see G. L. c. 32B, § 14 (1994 ed.), as has been done under G. L. c. 32A, § 3 (1994 ed.), concerning participation in a municipality's program under G. L. c. 32B (1994 ed.) by a retiree who was not a participant in such a program at the time of retirement."[18] *McDonald* v. *Town Manager of Southbridge*, 423 Mass. 1018, 1018 (1996).

Given that G. L. c. 32B establishes a sparse framework for

---

[17]Although the present case involves health insurance provided by an health maintenance organization under another section of the statute, G. L. c. 32B, § 16, we construe G. L. c. 32B, §§ 9 and 16, to the extent possible, in a consistent manner. See, e.g., *Yeretsky* v. *Attleboro*, 424 Mass. 315, 319 (1997).

[18]Cioch's argument that G. L. c. 32B gives a municipality "no discretion" to decline to enroll a retiree into its group health insurance plan, and makes it "mandatory" to do so, is based on a flawed reading of *McDonald* v. *Town Manager of Southbridge*, 39 Mass. App. Ct. 479 (1995). The Appeals Court's decision in that case rejected the town's argument that G. L. c. 32B, § 9, precluded it from enrolling, postretirement, a retiree into its group health insurance plan. It did not address whether a town could regulate postretirement eligibility. Our decision, on further appellate review, made clear that such regulation is permissible. *McDonald* v. *Town Manager of Southbridge*, 423 Mass. 1018 (1996).

provision of public employee insurance, there is nothing unreasonable about the town's defining eligibility for that insurance, or conditioning eligibility on preretirement or at retirement participation. When construing statutes such as c. 32B, we "attempt to ascertain and carry out the intent of the Legislature. *Baker Transp., Inc.* v. *State Tax Comm'n*, 371 Mass. 872, 877 n.11 (1977). To that end we examine the whole statute with attention to the language used, the evil to be remedied, and the object to be accomplished by enactment." *Hayon* v. *Coca Cola Bottling Co. of New England*, 375 Mass. 644, 648 (1978). See *Yeretsky* v. *Attleboro, supra* at 319. In enacting G. L. c. 32B, the Legislature generally intended to "enabl[e] each community which votes to accept the statute to contract for and contribute to a program of insurance for its employees," *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Chatham*, 404 Mass. 365, 367 (1989), to "gather[ ] employees in large groups to facilitate bargaining for and administering insurance coverage," *id.* at 369, citing *Municipal Light Comm'n of Taunton* v. *State Employees' Group Ins. Comm'n*, 344 Mass. 533, 539 (1962), and to provide a "comprehensive scheme of [health insurance] coverage" for public employees. See *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Chatham, supra* at 368; *McDonald* v. *Town Manager of Southbridge*, 39 Mass. App. Ct. 479, 480-481 (1995). See G. L. c. 32B, § 1 ("purpose of this chapter is to provide a plan of group . . . health insurance").

As a local-option statute, however, G. L. c. 32B is "effective in a city and town only when the municipality votes to adopt its provisions," *Yeretsky* v. *Attleboro, supra* at 316-317, and a municipality is permitted to adopt "only those provisions of the statute that best accommodate its needs and budget."[19] *Id.* at 317. While the statute establishes the broad requirements for

---

[19]Both Cioch and the town argue that there are economic benefits to be derived from their respective positions. Given our conclusion that the Legislature has left it largely to municipalities to design and implement their health programs, we do not consider the possible economic impact of the municipality's choices in this case. Likewise, while Cioch argues that postretirement health insurance benefits are necessary to attract employees into public service, we note only that such benefits are available to attract such employees, but they must comply with eligibility requirements.

participating municipal insurance programs, it otherwise accords municipalities substantial latitude in the adoption of "such rules and regulations, not inconsistent with this chapter, as may be necessary for the administration of this chapter." G. L. c. 32B, § 14. See *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Chatham, supra* at 367 ("A community is bound by expressly stated constraints in setting up its program, but is given broad authority to act within those constraints").[20]

Nothing in the plain language of G. L. c. 32B, §§ 9 or 16, requires a municipality to permit a retiree who has not enrolled in a municipal health insurance plan while employed, to enroll in a municipal health insurance plan after she has retired, or precludes it from doing so.[21] *McDonald* v. *Town Manager of Southbridge, supra* at 480. Chapter 32B addresses the broad requirements with which a municipal health insurance group policy must comply, including the periods (i.e., active employment and retirement) for which it must offer coverage. See *id.* at 481. It does not, however, define individual eligibility. The requirement in § 9 that "the group general or blanket insurance . . . shall be continued" refers not to compulsory insurance coverage for individual retirees, but rather "mandates that the period covered by group policies shall continue through retirement without specifying whether a retired employee has to be

---

[20]This authority is similar to that granted to the GIC, G. L. c. 32A, § 3, as administrator of G. L. c. 32A. See G. L. c. 32B, § 16 (municipality may adopt "such rules and regulations as may be necessary for the administration of this section"). While the GIC has promulgated more inclusive eligibility regulations than the town has adopted, see 805 Code Mass. Regs. § 9.20 (1996) (permitting retirees to apply for enrollment postretirement, but not automatically extending coverage), they are not the only reasonable eligibility requirements. The Legislature has given each "appropriate public authority in each governmental unit" discretion to fashion a program of insurance meeting its needs, G. L. c. 32B, § 14, and requiring participation at the time of retirement is not inconsistent with the statute.

[21]In keeping with the noncoercive nature of the statutory scheme, not only are municipalities not obliged to accept the provisions of G. L. c. 32B, but once they have, employees are not obligated to accept coverage. *Municipal Light Comm'n of Taunton* v. *State Employees' Group Ins. Comm'n,* 344 Mass. 533, 539 (1962) (while Legislature could force insurance on public employees, G. L. c. 32B, § 4, permits employees to opt out). *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Chatham,* 404 Mass. 365, 369-370 (1989).

covered prior to retirement." *Id.* at 481. While G. L. c. 32B, § 16, is not identical to § 9, its requirement that a municipality "make available the services of a health care organization to certain eligible and retired employees," similarly obligates a municipality to contract for coverage for eligible retirees.

Undoubtedly, a municipality may not enact a bylaw, policy, or regulation that is inconsistent with State law. See, e.g., *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 19 (2000); *Boston Gas Co.* v. *Somerville*, 420 Mass. 702, 703 (1995). But G. L. c. 32B, § 16, if accepted by a municipality, requires only that a municipality obtain a health insurance policy or policies providing coverage for "eligible" retirees. See *Yeretsky* v. *Attleboro*, *supra* at 322-323 & nn.15-16. The Legislature's use in § 16 of the language "certain eligible and retired employees" leaves it to individual municipalities to define the appropriate class. See *Shea* v. *Selectmen of Ware*, 34 Mass. App. Ct. 333, 336-337 (1993) (public authority has substantial authority to make and change eligibility requirements). The town accordingly is free to adopt a policy limiting enrollment to active employees, provided the policy provides for continued coverage of those employees during their retirement, as the statute requires.

We similarly reject Cioch's contention that application of the town's policy to her constitutes an improper retroactive denial of health insurance benefits: Cioch has not demonstrated that she has been denied in retirement any benefit she earned as an active employee. Specifically, she has not shown either that the benefits she earned as an active town employee included the right to enroll in the insurance program after retirement, cf. *Gordon* v. *Safety Ins. Co.*, 417 Mass. 687, 689 (1994) ("When policy language identifying those to whom coverage is afforded constitutes part of the basic insurance agreement, a person claiming coverage . . . must demonstrate that he is an insured"); *McDonald* v. *Town Manager of Southbridge*, *supra* at 479 (plaintiff's burden to demonstrate eligibility for coverage), or that her failure to enroll in the program was in reliance on any representation by the town concerning future eligibility. Indeed, the parties stipulated that Cioch did not "discuss health insurance benefits upon her retirement with any representative

of the school department," and she does not allege that the town made any representation about postretirement eligibility.[22] The record demonstrates no expectation of postretirement eligibility on Cioch's part.

Certainly, G. L. c. 32B does not preclude postretirement enrollment, see *McDonald* v. *Town Manager of Southbridge, supra* at 479, and it does permit the town's active employees to continue their health insurance coverage during retirement. *Id.* But nothing in the record supports the notion that Cioch, as a retiree, is entitled to benefits available to active employees. Cf. *Larson* v. *School Comm. of Plymouth*, 430 Mass. 719, 724 (2000) (health insurance "is an unearned benefit, no different in concept from holidays, future sick leave, or other similar benefits"). While Cioch's appellate brief is replete with language to the effect that the town's policy causes the "forfeiture" of a substantive right, she has not established forfeiture of rights she had as a retiree. The town's policy, first reduced to writing in 1999, has the effect of denying enrollment to retirees who were not enrolled at the time of retirement. But Cioch has not demonstrated that the policy was applied retroactively to deny her benefits to which she otherwise would have been entitled.

3. *Conclusion.* The decisions of this court and the Appeals Court in *McDonald* v. *Town Manager of Southbridge*, 39 Mass. App. Ct. 479 (1995), *S.C.*, 423 Mass. 1018 (1996), built on prior decisions establishing the broad authority of municipalities to regulate the terms of their health care plans within the statutory framework. See, e.g., *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Chatham*, 404 Mass. 365, 367 (1989); *Shea* v. *Selectmen of Ware, supra.* In the more than ten years since *McDonald* v. *Town Manager of Southbridge, supra*, the Legislature has not amended the statute to limit that discretion. Accordingly, we conclude that the town properly may proscribe postretirement enrollment in its G. L.

---

[22]In contrast, it appears that another retiree, who was enrolled in the town's health insurance plan on retirement, was permitted to add coverage for his wife postretirement. In that case, however, there were allegations that an employee in the town treasurer's office led the employee to a belief that the wife could be added during a future enrollment period.

c. 32B health care plans, by limiting eligibility for enrollment to active employees.

*Judgment affirmed.*